Spear, J.
Two propositions are urged by plaintiff In error in support of her claim that the judgment of the circuit court shouid be reversed. One: Where *94 the owner of land sells it, receives a part of the consideration, and agrees in writing to convey on payment of the balance, and puts the vendee in possession, the purchaser becomes the owner of the land, having such title as would descend to his heirs, and not to his legal representatives, the vendor retaining only the naked legal title which he holds in trust for the vendee, with a lien upon the land for the unpaid purchase money, which is personal property, and hence the interest of the vendor cannot be attached in a suit at law, by merely levying on the land without garnishment. Two: Even if such leA^y of attachment creates a lien it ceases unless there is an order for the sale of the property while the case remains, on the docket.
1. That, in such case, the vendee is the beneficial owner to the extent of the purchase money paid, and that the vendor holds the legal title in trust for the-purchaser, subject to the duty of conveying the legal title on compliance Avith the terms of the contract by the véndee, is, we suppose, not disputed anyAvhere. The position of the vendor is sometimes described as that of a trustee, and it is declared, here and there, that the lands of a cestui gue trust cannot be taken for the debts of the trustee. And this, Ave suppose, is not. disputed anyAvhere. And so, in a number of cases,, some early ones in this state, and some in other jurisdictions, color is given to the conclusion that the rule applies in all cases of vendor and vendee. Manley v. Hunt, 1 Ohio Rep., 258, is a case of this character. One Lay had contracted to sell land to one Harman. The latter, for a valuable consideration and in good faith, and before receiving a deed, sold all his right and interest in the land to Manley. Afterward Hunt recovered a judgment at laAv against Harman, and *95 after the judgment Lay conveyed to Harman and he to Manley. Shortly after, Hunt sued out execution against Harman and caused it to be levied on the land, and was proceeding to sell it. The question was whether or not the land could thus be sold on execution. The court held tlmt it could not be, observing that “it would be productive of much niischief and injustice to make trust estates liable to judgments against the trustee. Such a principle never has been, and we trust never will be, recognized in Ohio. From the moment Harman contracted in good faith to sell the land to Manley for an adequate consideration, he became a trustee for Manley, and the land ceased to be liable for his debts on after acquired judgments. It then became liable in equity to the debts of Manley, and the purchase money, if any part of it remained unpaid, might be reached in the same way by the creditors of Harman.” The gist of this decision, it will be especially noted, is that the land cannot be sold on execution, but creditors of the vendor might reach any purchase money remaining unpaid in equity. The rule that when lands have been sold, the vendor becomes a trustee for the vendee, and the land ceases to be liable for the debtsofthevendoronafteracquired judgments, is approved in Butler v. Brown, 5 Ohio St., 211, but the court also gives effect to the last sentence of the opinion in the Manley case and holds as the law of the case that: “The vendee of a judgment debtor who has not paid the purchase money, but has received a conveyance from the judgment debtor, cannot sustain a'bill to quiet his title as against the purchaser of the land under a judgment rendered after the contract of sale, unless he has paid or brings into court the purchase money.” It seems apparent that the general language of the opinion in the Man *96 ley case is somewhat qualified by the judgment rendered in the Butler case.
We are of opinion that the broad language of the earlier cases, and of some text books, is not in accord with later holdings, nor with reason. The misapprehension arises, as we think, in assuming that the vendor is a mere naked trustee. Such in reality is not his position. His legal title would, at common law, have been sufficient to maintain ejectment under the rule that, in general, the legal title must prevail. And such is the la w now in many of the states, and is the rule of the United States Supreme Court. 10 Am. & Eng. Encyc. Law (2d ed.), 498; Burnett v. Caldwell, 9 Wall., 290. Nor do we know of any rule in this state which would defeat ejectment by the vendor where the vendee is in default, at least where he has wholly defaulted. Showers v. Emery, 16 Ohio Rep., 294. These considerations have an important bearing upon the character of the vendor’s interest in the land, for it would be a strange situation to find a party clothed with sufficient title to and interest in land to constitute the basis of an ejectment to recover its possession, and yet not sufficiently the owner to permit execution or attachment against the same land by his creditors. The rule undoubtedly is that, while, in a general sense, the vendor holds the legal title in trust, yet so long as any purchase money remains unpaid, he still retains a personal right and interest in the laud, and cannot be compelled to part with the title except upon full compliance by the purchaser with the terms of the contract. The parties deal at arm’s length, and, in such circumstances, do not stand in relation of trustee and cestui 'que trust. The attitude of the parties is -well stated in Jaeger v. Hardy, 48 Ohio St., 335, to the effect that a vendor’s interest, *97 before conveyance, “is the legal title, and a beneficial estate in the lands to the extent of the unpaid purchase money,” while that of the vendee is “an equitable estate in the land equal to the amount of the purchase money paid by him, and which, upon full payment, may ripen into a completé equity entitling him to conveyance of the legal title according to the terms of the contract.” This language cannot be reconciled with the proposition that the purchaser is the full owner and the vendor a mere naked trustee, and if we adhere to the principle above quoted, as we must, the latter proposition must fail. Every just right of the vendee is protected by the rule that his ownership extends to the amount of the purchase money paid, and the right to receive a deed upon payment of the balance of the purchase money in compliance with the contract. Possession by the purchaser gives notice of his right to all the world, and of nothing more. Record title being in the vendor, his creditors are justified in treating the land as his save only as to the rights of the vendee, and so long as the latter is protected in his rights under the contract and his possession, he cannot reasonably object to creditors of the vendor collecting their debts, the spirit of our law being that every man should pay his honest debts, and that strangers should not, without ground, interpose to prevent collection.
It is stated, at least inf eren tially, by counsel for plaintiff in error in their brief, that the levying of an attachment stands upon the same footing as that of an execution, and they cite Shorten v. Drake, 38 Ohio St., 76, as supporting the proposition, and they argue that had the land been levied on by execution, and the land sold under the levy, the purchaser would get *98 no right nor title, legal or equitable. It is not necessary for the purposes of this case to combat the conclusion of counsel, for the sale ordered is not upon attachment or execution, but is sought in the way suggested in the Manley case and adopted in the Butler case, viz: an equitable proceeding. But, however that may be, the proposition is not in accord with the holdings in a number of Ohio cases. Parker v. Miller, 9 Ohio Rep., 108; Scribner v. Lockwood, do., 184; Paine v. Mooreland, 15 Ohio Rep., 435; Minns v. Morse, do. 568. These cases sustain the proposition that the interest of a vendor, while any of the purchase money remains unpaid, is one subject to levy by attachment or execution. And this conclusion is warranted by our statute. Admittedly the vendor has an interest in the land of some character, equitable in its nature, if you please, but equitable interests in land are by our legislation treated as real estate. The statute (sec. 5524), which directs the mode of executing an attachment, requires the officer “to attach the lands,” in other words, the real estate. But the case of Lefferson v. Dallas, 20 Ohio St., 68, is directly iu point. It is there held: “A contract for the sale of real estate does not, of itself, free the land from the lien of judgment against the vendor. It is the payment of the purchase money which entitles the purchaser to protection in equity; and to the extent that the purchase money remains unpaid when the lien attaches, the land will be held bound.” It would seem unnecessary to pursue the subject further, but see, also, Ranney v. Hardy, 43 Ohio St., 157, and Jaeger v. Hardy, supra.
But it is insisted that the question here discussed is controlled by the consideration that the interest of the purchaser, in case of death, would descend to the *99 heirs and not to the legal representative, while, in ease of death of the vendor, his interest would pass to his legal representative and not to his heirs. It is true that, under our statutes, an equity in lands may be the subject of devise, and a perfect equity in lands held by an intestate, passes to his heirs by descent; and it is true, further, that, by force of the statute, money due as purchase money passes to the personal representative, and he may, upon receipt of it, obtain authority to deed to the purchaser. So, too, the personal representative may, in case the personal property is insufficient to pay all debts, resort to all real estate in which the intestate had an interest in order to make up the deficiency. Ting authority given is to sell the real estate, and that is the interest one has in lands, tenements or hereditaments. This may, under the statute, be legal or equitable or both, although under our former practice the test was that if it be such an interest as could be enforced in a court of law, it was legal in terest or estate, but if such as could be enforced only in a court of chancery, it Avas an equitable interest or estate. But the instances above given are only examples, of Avhich many are found in the course of the laAr, where, for some purposes real estate is treated as personalty, and personalty as real estate. In general these rules are resorted to in order to the more easily Avork out the rights of the parties in respect to descents and distributions, and the more convenient administration of estates of in-testates, but they cannot, Ave think, be regarded as changing the essential character of the different kinds of estates in land; nor do they, as we think, support the contention urged by counsel, that the interest of the vendor in this case is such as to be beyond the reach of levy by execution or attachment.
*100 2. The proposition that even if the attachment created a lien it ceased because no order of sale was entered while the case remained on the docket, would seem to be answered by Liebman v. Ashbacker, 36 Ohio St., 94, and cases there cited. At all events we do not think the point well taken.
The case at bar was a suit to marshal liens and subject the land to the Bank’s claim. The judgment of the circuit court in legal effect simply subjected the purchase money remaining due to the payment of the Bank’s judgment, protecting the plaintiff in error as to the amounts previously paid, and the judgment will be

Affirmed.