**Walter E. Sinclair, Plaintiff-Appellant, v. Sullivan Chevrolet Company, a Corporation, Defendant-Appellee.**

### Gen. No. 10,477.

Third District.
January 2, 1964.
Rehearing denied January 23, 1964.

Appleman & Zimmerly, of Champaign, for appellant.

Busch, Harrington & Porter, of Champaign, for appellee.

ROETH, JUSTICE.

Plaintiff brought this action to recover damages for breach of an employment agreement. Judgment was entered on defendant's motion for summary judgment, from which judgment plaintiff appeals. In support of the motion, defendant attached affidavits of its President and Vice President, the deposition of each of these officers and the deposition of plaintiff. For a complete understanding of the case the substance of the complaint should be set out.

The complaint alleges an oral agreement between plaintiff and defendant made on May 30, 1960, whereby plaintiff was to start work for defendant on June 6, 1960, for at least one year as sales manager of defendant corporation. The complaint alleges that defendant represented it desired plaintiff to move from St. Louis, his home, to Champaign to undertake the job as sales manager. The complaint then charges that defendant "in order to induce the plaintiff to act, represented, stated and promised" to pay him $1200 per month plus a bonus to be later agreed upon, based upon a percentage of profits realized on the sale of used automobiles and trucks but in any event no less than $20,000 per year, pay plaintiff's expenses of moving his family and household effects, provide plaintiff with an automobile and certain extras and finally, to reduce the agreement to writing and execute the same on June 6, 1960. That plaintiff accepted the terms, not knowing the promises, etc., were falsely made and

were in fact misrepresentations that defendant did not intend to keep. Induced by the promises and in reliance upon them, plaintiff resigned his job in St. Louis, moved to Champaign and expended and became liable for large sums of money and changed his position greatly to his detriment. From the record, it is clear that plaintiff left a job in St. Louis paying in excess of $1500 per month, moved his family to Champaign and undertook the job. He worked until March 18, 1961, then left defendant, alleging he left because of defendant's failure to act in accordance with its promises. There is complete disagreement as to the terms of the contract; however, this is of no importance in consideration of this case. The complaint anticipates the defense of the Statute of Frauds and alleges that defendant is estopped to assert this defense because of the facts alleged "inasmuch as the successful assertion of such defense would permit a fraudulent effect upon, and great prejudice to, the plaintiff."

To the complaint defendant first filed a motion to strike alleging the action barred by the Statute of Frauds and that the facts alleged do not set out an estoppel. The court denied the motion and defendant answered. As we have noted, the record does not dispute the contract, only the terms. There is no dispute that plaintiff moved to Champaign to undertake the job. For what it is worth, it is also noted that defendant paid plaintiff $1200 each month while he was employed, plaintiff claiming it was in accordance with the agreement he alleges, defendant claiming it was a base salary of $1000 plus an estimated $200 bonus per its offer and denies it agreed to a $20,000 minimum salary.

The issues are fairly well defined by the parties. The Summary Judgment Act, paragraph 3, provides:

". . . The judgment or decree sought shall be rendered forthwith if the pleadings, depositions,

12

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law. . ."

In Ray v. City of Chicago, 19 Ill2d 593, 169 NE2d 73, the Supreme Court said:

"Summary judgment procedure is not designed to try an issue of fact but rather to determine whether one exists. J. J. Brown Co., Inc. v. J. L. Simmons Co., Inc., 2 Ill App2d 132, 118 NE2d 781. If, upon examination of the record, it can be fairly said that there does exist a triable issue of fact then the motion for summary judgment should be denied. Barkhausen v. Naugher, 395 Ill 562, 70 NE2d 565; Shirley v. Ellis Drier Co., 379 Ill 105, 39 NE2d 329; Diversey Liquidating Corp. v. Neunkirchen, 370 Ill 523, 19 NE2d 363, 120 ALR 1395."

The duty of the court then is to ascertain if a triable issue exists and it is our opinion that we must first resolve the question of whether the action is within the Statute of Frauds and if so, is defendant estopped to assert this defense. The Statute of Frauds, Section 1 (Chap 59, Sec 1, Smith Hurd Ill Rev Stat) provides:

"That no action shall be brought . . . to charge any person . . . upon any agreement that is not to be performed within the space of one year from the making thereof. . ."

It is agreed that the above statute is involved and it is clear that no writing or memorandum was prepared outlining the agreement.

Defendant first contends the agreement is not within the Statute of Frauds, since it was impossible of performance in one year, citing Balstad v. Solem Ma-

chine Company, 26 Ill App2d 419, 168 NE2d 732. This contention is without merit, for clearly the agreement was for one year, starting June 6, 1960, and it is conceded the agreement was made May 31, 1960. In the Balstad v. Solem Machine Company case, supra, the court found the contract there to be one terminable at will and said:

> "By the act of the defendant in discharging the plaintiff without notice, he has indisputably shown that the contract was terminable at the will of either party. This construction was the construction placed upon the contract by the plaintiff also, since he has not sought to recover for the balance of the year 1958. When both parties to an oral agreement by their actions interpret the contract as one terminable at will, it certainly is beyond the power of a court to place a different interpretation on the agreement. . . .
>
> "This contract could have been concluded by many conditions, all occurring within one year. The death or resignation of the plaintiff, or abandonment or bankruptcy of the defendant would have effectively terminated the contract. This being so, the contract could be performed in one year and so was not within the statute."

Plaintiff attempts to infer from this that "termination" of the contract is synonymous with "performance." In the Balstad case, the court clearly states the law, "We believe that the courts have interpreted this statute to provide that the contract is unenforceable only if it is impossible of performance in one year."

Plaintiff argues that the contract could have been concluded by many conditions, all occurring within one year. Other than the death of plaintiff, we find nothing within the record and nothing is brought to

14

the court's attention to show the contract could have been "performed" within one year. In every employment contract the contract is subject to termination at the death of the employed party, but this does not mean the contract has been performed in full. If we were to hold termination and performance synonymous, the act would be rendered useless. In Osgood v. Skinner, 111 Ill App 606 at 617, affirmed in 211 Ill 229, 71 NE 869, the court said:

> "Where the agreement by some contingency such as death or otherwise is capable of being fully performed within a year and is not simply *terminated* by the death of the party, it is not within the statute. . . . If appellees had died during the first year, their agreement not to compete with appellant would have been completely performed." (Emphasis supplied.)

This is the law as set out in the many cases on the subject. Where the contract extends to a point in time, be it death or some other circumstance, at which time the full service contemplated will have been rendered, and that point in time could occur within one year, the Statute of Frauds will not be a bar to enforcement of the action. 49 Am Jur 414, Statute of Frauds, Sec 58.

The record is completely devoid of anything creating an issue that could be considered by a jury on this point.

■ Plaintiff next contends that defendant is estopped from asserting the Statute of Frauds for the reason that plaintiff, in reliance on the promises made by defendant, greatly changed his position to his detriment. That plaintiff greatly changed his position is beyond dispute and we assume, for the purpose of this opinion, that such change was to his detriment.

In his argument plaintiff does not rely on his allegations in the complaint that the representations were falsely made. He argues strongly and persuasively that the promise of defendant, acted upon by plaintiff, was sufficient to compel the court to apply the doctrine of estoppel.

The Supreme Court in Ozier v. Haines, 411 Ill 160, 103 NE2d 485, held that the breach of a promise which the law does not regard as binding is not a fraud and does not justify the application of the doctrine of estoppel.

Plaintiff cites considerable authority, but in each instance the case involved is sufficiently different on its facts to prevent its application to the case before us. Some of the decisions and authorities relied on do not involve the issue of the Statute of Frauds.

As stated in Ozier v. Haines (supra),

"The doctrine of equitable estoppel and that of the Statute of Frauds have developed side by side in the law, each for the ultimate purpose of preventing fraud and injustice. *Despite* this . . . the one *may* be a modification and regulation of the other. We believe, however, that each doctrine must be given a field of operation and that neither should be allowed to completely efface the other." (Emphasis supplied.)

In Bredemann v. Vaughan Mfg. Co., 40 Ill App2d 232, 188 NE2d 746, the doctrine of estoppel was applied to a case outside of the Statute of Frauds by reason of the fact that the oral contract could have been performed within one year.

In Dill v. Widman, 413 Ill 448, 109 NE2d 765, the issue of the Statute of Frauds was not before the court. The widow counterplaintiff had received certain property in an oral postnuptial contract, in con-

16

sideration of her waiving of certain marital rights to property upon the death of her husband.

In these, and many other cases, the courts have recognized the fact that the estoppel doctrine has application outside of the field of the Statute of Frauds. The question in many of these cases is illustrated in the Bredemann case that plaintiff relies on, whether an act of forebearance or some action by the promisee in reliance on the promise, to the detriment of the promisee, is sufficient consideration to support the contract. In others, the doctrine has been applied to prevent the promisor from asserting a legal right he has waived by previous acts. Dill v. Widman (supra). It appears with some clarity then that where the case does not involve the Statute of Frauds the doctrine of promissory estoppel can be applied as suggested by plaintiff, that is to say, where one has relied on a promise and reacted to his detriment. Where, however, a case is clearly within the Statute of Frauds, promissory estoppel is inapplicable, for the net effect would be to repeal the Statute completely.

In the Ozier case, supra, the Supreme Court said:

". . . the moral wrong of refusing to be bound by an agreement because it does not comply with the Statute of Frauds, does not of itself authorize the. application of the doctrine of estoppel, for the breach of a promise which the law does not regard as binding is not a fraud. . . . To hold otherwise would be to render the statute entirely nugatory. . . . six elements must appear in order to invoke the doctrine of equitable estoppel: '(1) Words or conduct by the party against whom the estoppel is alleged amounting to a misrepresentation or concealment of material facts; (2) the party against whom the estoppel is. alleged must have knowl-

17

edge, either actual or implied, at the time the representations were made, that they were untrue'; . . ."

In that case, plaintiff contended, as plaintiff does here, that the doctrine of estoppel has been developed to the extent that the first element is no longer required. The court said:

"To adopt such a view would render the Statute of Frauds useless and unmeaning. It is true that harsh results, . . . may occur where one has changed his position in reliance on the oral promise of another, but it is a result which is invited and risked when the agreement is not reduced to writing in the manner prescribed by law. . . . To withdraw the first element . . . where equitable estoppel is urged against one asserting the Statute of Frauds, as plaintiffs urge, would allow either party to circumvent the Statute of Frauds at will. It is true that a fraudulent intention or purpose is not essential to the doctrine of estoppel, but in cases involving oral contracts the estoppel must be based on misrepresentation or concealment if the Statute of Frauds is to be given effect at all. That is the point of counterbalance between the two doctrines and the factor for determining which shall apply. When the parties here entered the disputed oral contract, each knew, or is deemed to have known, that they had entered into an unenforcible agreement. Both had all knowledge in reference to the transaction and neither side had information that the other did not have. *What either side did thereafter* in reference to the subject matter would not take their agreement out of the Statute of Frauds, unless they were induced to take the action by some misrepresentation or fraud of the other. In the

18

absence of fraud or mispresentation, the party changing his position must be said to have acted solely upon his own judgment and at his own risk. . . ." (Emphasis supplied.)

Plaintiff insists the Dill v. Widman (supra) case properly states the law. There the court said:

"Fraud is a necessary element but it is not essential that there be a fraudulent intent. It is sufficient if a fraudulent effect would follow upon allowing a party to set up a claim inconsistent with his former declarations."

The statement is, of course, correct when properly applied, but cannot be used in derogation of the Statute of Frauds. If this were true, then the Statute of Frauds would be meaningless. If an oral promise or some other agreement is invalid by reason of the statute, and action is taken on the promise or agreement, the net effect would be to work some moral fraud upon the promisee in every instance. If we infer from this fact that the promise was either fraudulent or a misrepresentation, we have repealed the Statute completely. Plaintiff asks this court to go even further, that is, to declare that a promise is sufficient, if acted upon by the promisee to his detriment, to assert the doctrine of estoppel, citing Loeb v. Gendel, 23 Ill2d 502, 179 NE2d 7. Plaintiff insists the Supreme Court in the Loeb case so interpreted the law. We disagree. There the court said:

"According to the complaint, 'defendant represented to plaintiff that she did not need the advice and protection of independent counsel . . . and that the agreement aforesaid was an enforcible agreement, binding upon the parties thereto'. . . . In addition, it appears that defendant is a law-

19

yer, and that during their marriage, as well as in the negotiations resulting in the alleged agreement, the plaintiff placed trust and confidence in him and relied upon his advice and representations."

As we see the case, the Supreme Court held the facts to show a misrepresentation of fact and an abuse of a confidential relationship on which plaintiff had a right to rely. Plaintiff cites a number of cases to fortify his position. We deem it unnecessary to attempt to distinguish each case, although we feel they are distinguished from the case at bar on the facts. Suffice to say that where in such cases the law *appears* different from that stated in the Ozier case, the latter recites the present position of the Supreme Court and the present state of the law.

It should be noted that the cases in other jurisdictions are in accord, that acts performed in contemplation of the contract are not considered as sufficient past performance to bring the case within the exception of the Statute of Frauds or to permit application of the doctrine of estoppel. 6 ALR2d 1053 at 1074. The contention that plaintiff's move to Champaign and his quitting his job is prejudicial reliance and sufficient to warrant the application of estoppel is therefore without merit.

It is not contended by plaintiff that there was fraud or misrepresentation of fact at the inception of the agreement, merely that defendant did not intend to keep the promises made, when made. This is not sufficient to warrant the application of the doctrine of estoppel. Plaintiff was paid in accordance with the agreed amount to be paid per month and it was the yearly guarantee of $20,000 that is disputed. Both parties are deemed to have known they entered into an unenforcible agreement when the same was made. Sub-

20

sequently the agreement proved unsatisfactory to both or either party. The breach then occurred. Can we at this juncture impute misrepresentation to the defendant at the time of making the representation? It appears that in order to give the Statute of Frauds any effect at all we must adhere to the principal set out in the Ozier case, "What either side did thereafter in reference to the subject matter would not take their agreement out of the Statute of Frauds. . . ." By this we do not mean to assert that one could not recover for services rendered under an agreement of this nature, merely that he cannot claim compensation per the terms and for the duration of an unenforcible agreement, as plaintiff attempts to do here.

It is the opinion of this court, therefore, that the cause does not present issues of fact that justify the application of estoppel and that the cause herein is barred by the Statute of Frauds.

For the reasons set forth herein, the judgment of the Circuit Court is affirmed.

Affirmed.

CARROLL, P. J. and REYNOLDS, J., concur.